**Opinion filed July 16, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-25-00042-CR

_____

## STEVEN HOISINGTON JR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-23-0148-CR**

---

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Steven Hoisington Jr, of two counts of aggravated sexual assault of a child (Counts One and Two), first-degree felonies, and one count of indecency with a child by exposure (Count Three), a third-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(2), (d) (West 2026); § 22.021(a)(1)(B), (2)(B), (e) (West Supp. 2025). For Counts One and Two,

Appellant pled "true" to an enhancement paragraph that alleged he had previously been finally convicted of the offense of sexual assault of a child. The trial court found the enhancement to be "true" and assessed Appellant's punishment at life imprisonment for Counts One and Two, and, pursuant to the parties' agreement, ten years' imprisonment for Count Three. PENAL § 12.34 (West 2019), § 12.42(c)(2). The trial court also ordered that Appellant's sentences for Counts One and Two be served consecutively and that his sentence for Count Three be served concurrently with the sentence imposed for Count One. TEX. CODE CRIM. PROC. ANN. art.42.08(a) (West Supp. 2025).

In a single issue, Appellant contends that the evidence is insufficient to support his convictions. We affirm.

### I. *Factual Background*

#### A. *The Victim's Testimony*

The victim, S.R., was nine when these offenses were committed and eleven at the time of trial.[1] Her mother, B.R., began dating Appellant when S.R. was six, and S.R. called Appellant "dad." B.R. knew that Appellant had been previously convicted of sexual assault of a child and that he was a registered sex offender, but she permitted Appellant to move into her home with her two children, including S.R. B.R. and Appellant slept in one bedroom, while S.R. shared the other bedroom with her sibling.

S.R. testified that Appellant bought her candy, toys, clothes, and food, and often would drive her to the school bus stop in his pickup. S.R. testified that B.R. would drive S.R.'s brother to a different bus stop before going to work. B.R. worked

---

[1]To protect the identity of the victim and her family members, we refer to them by a pseudonym or initials. *See* TEX. CONST. art. I, § 30(a)(1); TEX. R. APP. P. 9.10(a)(3).

some weekends as well and would leave S.R. at home with Appellant or S.R.'s grandmother.

S.R. testified that Appellant showed her his "private part," which she called a "nona, nono," or "pee-pee," in B.R.'s bedroom. Appellant also showed her a "pink nona" that he removed from B.R.'s dresser drawer. Appellant told S.R. that her mother used it to put it in her "private part." He also showed S.R. other "nonas," like the pink one, that were in B.R.'s dresser drawer.

S.R. testified that, when Appellant was alone with her in B.R.'s bedroom, he touched her and "[k]issed [her] pee-pee." This would occur on the bed, and S.R. was naked. At times, Appellant removed his clothes and would show her his "pee-pee." He touched her with his hands "[i]n the inside," which S.R. said felt "[w]eird" and painful. He also touched her "pee-pee" with his mouth by kissing it and using his tongue. Appellant asked S.R. to kiss his "nono," which she testified meant his penis. Appellant also showed her a video of two people "having the S word," which S.R. clarified meant "sex." He told S.R. that "this is what people do." S.R. testified that Appellant sexually assaulted her three or four times in B.R.'s bedroom. Appellant also sexually assaulted her in his pickup, and he would touch her "nona" under her clothes. Twice, Appellant told S.R. not to tell anyone about what he had done to her.

S.R. knew that her grandmother did not like Appellant. Before the sexual assaults, the grandmother routinely asked S.R. if Appellant had touched her. S.R. told her grandmother that Appellant had shown her the pink "nona" and the grandmother told B.R. about this. B.R. asked S.R. if Appellant had touched her, but S.R. said "no" because she wanted to wait until she went to the hospital to explain what had occurred.

The next day, B.R. picked S.R. up from school and took her to a hospital where she was examined. S.R. testified that she also went to the Harmony Home Children's Advocacy Center, where a person asked her questions about what Appellant had done to her.

B. *The SANE Nurse's Testimony*

Abigail Carrasco, a Sexual Assault Nurse Examiner (SANE) at Medical Center Hospital in Odessa, examined S.R. S.R. told Carrasco that she had showered, wiped and washed, urinated, defecated, changed her underwear and clothes, eaten, and brushed her teeth since the last incident of sexual assault two days prior—all of which Carrasco testified reduced the chances of successfully collecting DNA evidence. Carrasco testified that S.R. stated Appellant had shown her his "nono," as well as a pink "nono" and sex videos, and that he wanted S.R. to kiss his "nono" but she did not. This happened every Saturday and Sunday when B.R. was at work. S.R. described how Appellant would touch her "girl nono" with his hands and sometimes put his fingers inside it, which sometimes hurt, and she described that Appellant would use a side-to-side motion with his fingers. S.R. said these events occurred in Appellant's and B.R.'s bedroom.

During the SANE examination, Carrasco observed redness and tenderness around S.R.'s vagina. She testified that the location of the redness and tenderness was consistent with S.R.'s testimony about Appellant's side-to-side motion, although other, nonsexual factors could cause the same symptoms, including an infection, a fall, or irritation. According to Carrasco, the DNA analyst could not identify any profiles from the swabs that were taken during the SANE exam.

C. *The Forensic Interviewer's Testimony*

Myrissa Whitfield conducted a forensic interview with S.R. at Harmony Home; S.R. told her that Appellant "tries to do nasty stuff with [me] every Saturday

and Sunday." Whitfield testified that S.R. stated Appellant tried to make her kiss and touch his "nona" and that he kissed and touched her "nona." S.R. told Whitfield that this happened in her mother's bedroom and in Appellant's pickup at the bus stop. In the pickup, Appellant would put his hand in S.R.'s pants and touch her "nono," which felt "weird" and burned. In the bedroom, S.R. stated that the sexual assaults happened on the bed and that Appellant would touch her "nona" with his fingers and he showed her a pink "nono" that looked like his "nono," which he also showed her. S.R. told Whitfield that she tried to call her mother and the police, but Appellant took her cell phone and put it in the dresser drawer.

S.R. also said that Appellant "would squeeze her boobies when they were laying on the bed" and would squeeze her buttock under her clothing in the bedroom and outside of the restroom at restaurants when her mother was not looking. Whitfield described S.R.'s interview as detailed and consistent for a child of her age. During the interview, S.R. drew a diagram of B.R.'s bedroom and wrote a note to B.R. that said S.R. did not want to see Appellant again. The diagram also included a drawing which S.R. described as depicting the bed, the dresser that contained the pink "nona," and Appellant's lips and tongue.

S.R. informed Whitfield that she told her grandmother that Appellant had shown her the pink "nono." Whitfield agreed that S.R. laughed and played during the interview but testified that it is not unusual for children's demeanor to remain unchanged during forensic interviews.

D. *The Mother's Testimony*

B.R. testified that she kept some sex toys in her bedroom, including the pink one that Appellant showed S.R. She stated that S.R. once found her sex toys when S.R. was four or five, but B.R. told her they were dog toys and did not tell her that

they were "nono[s]" or "penis[es]," or that B.R. used them. B.R. testified that the grandmother did not like Appellant because he was a registered sex offender.

On the Sunday that S.R. outcried to her grandmother, the grandmother told B.R., but B.R. did not confront Appellant that day. The next morning, B.R. told Appellant that S.R. had described the instances of sexual assault, and that he needed to leave her home. After that, B.R. took S.R. to Medical Center Hospital and then to Harmony Home. B.R. testified that she stayed in contact with Appellant until about two months before his trial even though she believed that he had sexually abused S.R.; she stated that she told him differently because she still wanted to have contact with him. B.R. never stated that she disbelieved S.R.'s outcry to law enforcement, Carrasco, or Whitfield.

B.R. testified that Appellant had two cell phones, one was for personal use, and the other was provided by his employer. She testified that she and Appellant never watched pornography together and that, to her knowledge, there was no pornography in her home or on Appellant's cell phones.

E. *The Digital Evidence*

Appellant was arrested at his workplace. The office manager there testified that she retrieved Appellant's employer-provided cell phone and reviewed its contents. Appellant's internet history included searches on "how to erase or wash off DNA from a body" as well as how to "pass a lie detector test." She did not discover any pornography on the cell phone. The office manager turned the cell phone over to the Ector County Sheriff's Office, which had obtained a search warrant for it. From the search of his cell phone, law enforcement discovered similar internet searches, including an article Appellant had accessed that addressed the recovery of salivary DNA from the skin after showering.

6

Law enforcement officers briefly interviewed Appellant before arresting him but did not interview S.R. or investigate or perform any forensic analysis of the trailer home or the pickup where the acts of sexual abuse were alleged to have occurred. They also did not collect any iPads or other devices that could be used to access the internet. However, officers did search Appellant's cell phones but did not discover any pornographic material on either of them.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence admitted at trial in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found that the State proved the essential elements of the charged offense beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319); *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, we must "presume that the factfinder resolved the conflicts in favor of the prosecution" and we defer to the factfinder's factual determinations. *Garcia*, 667 S.W.3d at 762 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* CRIM. PROC. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Garcia*, 667 S.W.3d at 762; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App.

2013) (citing *Hooper*, 214 S.W.3d at 13); *Lee*, 676 S.W.3d at 915. A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt if the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

### III. *Analysis*

Appellant contends that the evidence is insufficient to support his convictions because (1) there is no evidence to corroborate S.R.'s inconsistent testimony, and (2) law enforcement failed to conduct an adequate investigation. As Appellant puts it: "The bottom line is that the entire case for the State was based on a 9 year old child's . . . testimony."

It is well-settled, and we have held that the uncorroborated testimony of a child victim is, alone, sufficient to support a conviction for a sexual offense. *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd); *see* CRIM. PROC. art. 38.07 (West 2023). Further, neither medical nor physical evidence is required to corroborate the child victim's testimony. *Wishert*, 654 S.W.3d at 328 (citing *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.)).

A person commits aggravated sexual assault of a child if he causes his mouth to contact a child's sexual organ and the child victim is younger than fourteen. PENAL § 22.021(a)(1)(B)(iii), (2)(B). A person commits the same offense if he causes the penetration of the child's sexual organ by any means and the child victim is younger than fourteen. *Id.* § 22.021(a)(1)(B)(i), (2)(B). A person commits indecency with a child by exposure if, with the intent to arouse or gratify the sexual

9

desire of any person, he exposes his genitals, knowing that a child younger than seventeen is present. PENAL § 21.11(a)(2)(A).

S.R. testified that Appellant showed her his "nono," which she clarified was his penis, in B.R.'s bedroom. She also testified that on multiple occasions Appellant kissed her "nono," touched it with his hands, and put his fingers inside it. This testimony, without more, is sufficient to support each of Appellant's convictions. *See Wishert*, 654 S.W.3d at 328 (citing CRIM. PROC. art. 38.07).

Despite this evidence, we disagree that S.R.'s testimony is the only evidence that supports Appellant's convictions. S.R. was examined by Carrasco and interviewed by Whitfield. Carrasco's SANE examination, conducted two days after Appellant's last sexual assault, revealed redness and tenderness around S.R.'s vagina, which Carrasco testified was consistent with S.R.'s account of Appellant sexually assaulting her. Whitfield testified that S.R. stated Appellant kissed and touched her "nono" which burned and felt "weird," and that S.R.'s interview was detailed and consistent for a child of her age. S.R. also testified that Appellant showed her a pink "nono," and a pink sex toy which B.R. confirmed that she kept in her bedroom in the dresser drawer that S.R. described. Further, Whitfield and Carrasco testified that S.R. told them about the pink "nono." This testimony shows that S.R.'s account of Appellant's sexual abuse was largely consistent with the explanations that she provided to them, and the physical evidence. *See Wishert*, 654 S.W.3d at 328.

Although Appellant points to some differences between S.R.'s statements to Carrasco and Whitfield and her trial testimony, these differences were not inconsistencies so much as they were merely partial accounts made by S.R. about Appellant's acts of sexual abuse. For example, Whitfield did not testify that S.R. told her that Appellant put his fingers inside of her vagina. But S.R. testified at trial

that Appellant did, Carrasco testified that S.R. told her this as well, and S.R. never recanted. The minor differences in S.R.'s account of Appellant's acts of sexual abuse that she told to different witnesses do not necessarily indicate untruthfulness on her part, but rather can be attributable to her young age. *See*, *e.g.*, *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("Prosecuting sex crimes committed against children can be difficult due to the physical and emotional trauma suffered by the victims. . . . Children often are targeted for these crimes, in part because they tend to make poor witnesses." (quoting Senate Comm. on Crim. Just., Bill Analysis, Tex. S.B. 12, 83d Leg. R.S. (2013))); *Griffin v. State*, No. 02-19-00020-CR, 2021 WL 126650, at *3 (Tex. App.—Fort Worth Jan. 14, 2021, pet. ref'd) (mem. op., not designated for publication) (resolving in favor of the verdict, as required, any inconsistencies in the details, attributing them to the child's young age and the change of setting rather than to untruthfulness); *see also Wishert*, 654 S.W.3d at 327–28 (a child victim cannot be expected to testify with the same clarity as an adult (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990))). Moreover, it is the jury's role to determine the witnesses' credibility and the weight their testimony is to be afforded. *See* CRIM. PROC. art. 36.13; *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768.

In addition to the foregoing testimony, there is evidence of Appellant's consciousness of guilt. Appellant's employer provided Appellant's work cell phone to law enforcement after he was arrested, and it contained internet searches about how to erase or remove salivary DNA from skin after a shower, as well as how to pass a lie detector test. These searches that were made by Appellant and their content are indicative of Appellant's consciousness of guilt and constitute additional evidence to support his convictions. *See Rodriguez v. State*, 732 S.W.3d 289, 293–94 (Tex. App.—Houston [14th Dist.] 2025, pet. ref'd) (collecting cases); *Hance v.*

11

*State*, 714 S.W.3d 775, 816 (Tex. App.—Fort Worth 2025, no pet.) ("A defendant's conduct after the commission of a crime which indicates 'consciousness of guilt' is admissible to prove that he committed the offense." (quoting *Hedrick v. State*, 473 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2015, no pet.))); *Lee v. State*, 866 S.W.2d 298, 302 (Tex. App.—Fort Worth 1993, pet. ref'd) ("A 'consciousness of guilt' may be one of the strongest indicators of guilt." (quoting *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.))). S.R. also told Whitfield that Appellant took her cell phone and put it in the dresser drawer when she attempted to call her mother and the police to report Appellant's sexual abuse. This is further evidence of Appellant's consciousness of guilt. *See Hance*, 714 S.W.3d at 816; *Lee*, 866 S.W.2d at 302.

Appellant also argues that no evidence of pornography was found on either of his cell phones, despite S.R.'s testimony that he showed her a pornographic video. Again, Appellant's claim that S.R.'s testimony on this point is inconsistent falls within the province of the jury to determine its credibility and weight. *See* CRIM. PROC. art. 36.13; *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768.

Finally, Appellant contends that his convictions cannot stand because law enforcement failed to conduct a thorough investigation or perform any forensic analysis of the trailer home or any digital media devices that were accessible to Appellant beyond his cell phones. However, when conducting an evidentiary review, we do not review the sufficiency or adequacy of law enforcement's investigation; rather, we only review the evidence that was presented at trial, and do not consider or speculate as to what evidence the State could have or arguably should have presented. *See Henderson v. State*, No. 11-22-00031-CR, 2024 WL 269627, at *5 (Tex. App.—Eastland Jan. 25, 2024, no pet.) (mem. op., not designated for publication); *Meza v. State*, No. 11-20-00217-CR, 2022 WL 2976164, at *4 (Tex.

App.—Eastland July 28, 2022, no pet.) (mem. op., not designated for publication). Nevertheless, even without this other evidence, whatever it may have shown, the evidence in the record before us is sufficient to support Appellant's convictions.

We have reviewed the evidence in the light most favorable to the jury's verdicts and we conclude that a rational trier of fact could have logically inferred and found that the State proved the essential elements of the charged offenses beyond a reasonable doubt. Accordingly, we overrule Appellant's sole issue.

IV. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE


July 16, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

13